## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT CHU, | : | Civil No. 3:16-cv-1470 |
| | : | |
| Petitioner | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| RUSSELL PERDUE, | : | |
| | : | |
| Respondent | : | |

## MEMORANDUM

Presently before the Court is a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2241 filed by Petitioner, Robert Chu, an inmate currently confined at the Federal

Correctional Institution, Schuylkill, in Minersville, Pennsylvania ("FCI-Schuylkill").  (Doc. 1).

Named as the sole Respondent is Russell Perdue, Warden of FCI-Schuylkill.  Chu claims

that his due process rights were violated in the context of a prison disciplinary hearing.  The

petition is ripe for disposition and, for the reasons that follow, will be denied.

## I.     Background

On January 6, 2013, while incarcerated at FCI-Schuylkill, Chu was charged in

incident report number 2394280 with possession of narcotics, in violation of Federal Bureau

of Prisons ("BOP") Prohibited Acts Code Section 113.  (Doc. 7-1, p. 11).  A disciplinary

hearing was held and the disciplinary hearing officer ("DHO") ultimately found that Chu

committed the act as charged and sanctioned him with a loss of 41 days of good conduct

time, forfeiture of 54 days of good conduct time, 90 days of disciplinary segregation, and

loss of phone and visiting privileges for 18 months. (Doc. 7-1, p. 16).

The instant petition was filed on July 13, 2016. (Doc. 1). In the petition, Chu claims that the incident report is false. (*Id.* at p. 2). For relief, Chu requests that the Court restore his good time credits and void the finding of the DHO. (*Id.* at p. 8).

## II.   Discussion

Respondent argues that the petition should be denied because Chu was afforded all of his procedural rights, and "some evidence" supports the finding of the disciplinary hearing officer regarding incident report number 2394280. (Doc. 7, pp. 7-10).

As stated, on January 6, 2013, Chu was served with incident report number 2394280 charging him with a code 113 violation for possession of narcotics. (Doc. 7-1, pp. 11-12). The incident report describes the incident as follows:

> At approximately 1:35 PM, I conducted a random Pat Search on inmate Robert Chu, Reg. No. 90735-054 during the search I located [] nine small packages of paper containing a green leafy substance in inmate Chu's [r]ight back pocket. The substance was tested using NIK Test Kit E, Lot Control # 225063, the substance tested positive for Marijuana.

(Doc. 7-1, p. 11, Incident Report).

On January 7, 2013, the investigating lieutenant gave Chu advanced written notice of the charges against him. (*Id.* at ¶¶ 14-16). During the investigation, Chu was advised of his right to remain silent, and made the following statement, "It wasn't mine. I was holding it for somebody." (*Id.* at ¶¶ 23, 24). Chu did not request to call any witnesses. (*Id.* at ¶ 25).

2

At the conclusion of the investigation, the lieutenant determined that the report was properly

written, the inmate was appropriately charged, and he referred the incident report to the Unit

Discipline Committee ("UDC") for further disposition. (*Id.* at ¶¶ 26, 27).

On January 9, 2013, Chu appeared before the UDC. (*Id.* at ¶¶ 17-21). Chu

indicated that he understood his rights and stated, "this report is not true[,] they never found

drugs in my possession. I was called to the Lt office and shown the items that I never have

seen. I don't do drugs or hustle drugs." (*Id.* at ¶ 17). After the hearing, the UDC referred

the charge to the DHO due to the seriousness of the charge, and recommended that

sanctions be imposed if Chu was found guilty. (*Id.* at ¶¶ 19, 20).

On January 9, 2013, a staff member provided Chu with a copy of the "Inmate Rights

at Discipline Hearing" form and "Notice of Discipline Hearing before the Discipline Hearing

Officer (DHO)" form. (Doc. 7-1, pp. 13-14). Chu signed for his copies of the forms. (*Id.*).

Chu did not elect to have a staff representative, however he chose to call a witness at the

hearing. (*Id.* at p. 14).

On January 28, 2013, Chu appeared for a hearing before DHO K. Bittenbender.

(Doc. 7-1, pp. 15-17, DHO Report). During the January 28, 2013 DHO hearing, the DHO

confirmed that Chu received advanced written notice of the charges on January 7, 2013,

and that he had been advised of his rights before the DHO on January 9, 2013. (*Id.* at p.

15). The DHO again advised Chu of his rights, and Chu indicated that he understood them.

(*Id.*).  Chu waived his right to a staff representative and requested to call Officer Feger as a

witness.  (*Id.*).  Chu made the following statement regarding the charges, "It's not mine; I

had stamps that the officer took from me."  (*Id.*).

Based on the evidence presented at the hearing, the DHO found that Chu committed

the act as charged.  (*Id.* at p. 16).  In arriving at this conclusion, the DHO stated the

following:

> CHU's involvement in the incident, as noted in Section 11 of Incident Report
> 2394280, as provided by T. Pappas, Corrections Officer, was reviewed.
> Paraphrased, Officer Pappas writes: On January 6, 2013 at approximately
> 1:35 PM, I conducted a random pat search on inmate CHU, Robert, Reg. No.
> 90735-054, during the search I located [] nine small packages of paper
> containing a green leafy substance in inmate CHU'S right back pocket. The
> substance was tested using NIK test Kit E, Lot Control H225063, the
> substance tested positive for marijuana.
>
> Inculpatory evidence in the form of a photograph taken by Officer Grego
> dated 1/6/13 corroborated the evidence cited in this report.  The photograph
> clearly depicts the narcotics (marijuana) as described in the report.
>
> Inculpatory evidence in the form of a memorandum from Officer Feger dated
> 1/6/13 corroborated the evidence cited in this report.  Officer Feger writes:
> After completing the 1:30 p.m. move, I escorted CHU from Unit 4A to the
> lieutenant's office.  While escorting CHU, he stated, "that shit ain't mine,
> somebody gave it to me and told me to give it to this other dude".  After
> asking CHU what Officer Pappas took from him in the shakedown building, he
> stated, "I think it was marijuana but it's not mine."
>
> Inculpatory evidence in the form of a memorandum from Officer Pappas
> dated 1/6/13 corroborated the evidence cited in this report.  Officer Pappas
> writes: On 1/6/13 while conducting a pat search of Inmate CHU, I discovered
> a white sock in his right pants pocket containing $70.00 worth of stamps and
> inside the white sock was a fingertip of a rubber glove containing 8 packets of

4

a green substance.

The DHO believed the information provided by the staff member involved in
this case, as they derived no known benefit by providing false information.
The DHO finds the charge to be supported in this case based upon the
greater weight of evidence cited in this report. The DHO finds the charge for
code 113 to warrant the Forfeiture of Non Vested Good Conduct Time in
addition to the maximum Disallowance of Good Conduct Time based on the
offense being of a highly aggravated offense which greatly jeopardizes the
safety of staff and inmates.

Upon questioning by the DHO, Inmate CHU, Robert, Registration #90735-054
neither admitted nor denied the charge. He elaborated upon his plea by
stating, he had the stamps but the marijuana was not his.

After the consideration of evidence documented above, the DHO has drawn
the conclusion the greater weight of the evidence / some facts, listed in the
paragraphs above, support(s) the finding, inmate CHU, Robert, Register No.
90735- 054 committed the prohibited act(s) of Possession of Narcotics,
Code(s) 113 on January 6,2013, at or about 1:35 PM on the compound at FCI
Schuylkill, PA.

(*Id.*).

In addition to the incident report and investigation, the DHO considered documentary

evidence consisting of a photograph taken by Officer Grego dated January 6, 2013, a

memorandum from Officer Pappas dated January 6, 2013, and a memorandum from Officer

Feger dated January 6, 2013. (*Id.* at p. 15).

After consideration of the evidence, the DHO found that the greater weight of the

evidence supported a finding that Chu committed the prohibited act of possession of

narcotics (*Id.* at p. 16). As such, the DHO sanctioned him with a loss of 41 days of good

conduct time, forfeiture of 54 days of good conduct time, 90 days of disciplinary

segregation, and loss of phone and visiting privileges for 18 months. (*Id.*). The DHO

documented his reasons for the sanctions given as follows:

> CHU'S possession of marijuana potentially threatens both the orderly running
> of the facility and the safety of both staff and inmates. Drug use is preceded
> by the illicit substance being introduced by breeching the secure perimeter of
> the institution. The purchase of drugs tends to lead to debt and drug related
> debt has great potential to lead to violence in relation to
> payment/non-payment of the same. Inmates are the target for this violence
> and staff have great potential for injury responding to this violence. Further,
> being under the influence of drugs limits inmate's ability to be involved in
> meaningful correctional programming. Accordingly, Disciplinary Segregation,
> the Disallowance of Good Conduct Time and the Forfeiture of Non Vested
> Good Conduct Time is sanctioned to punish CHU for his behavior, while the
> Loss of Privileges (Phone and Visit) is sanctioned in an effort to deter him
> from it in the future.

(*Id.* at p. 17).

Chu was advised of his appeal rights at the conclusion of the hearing. (*Id.*).

Liberty interests protected by the Fifth Amendment may arise either from the Due

Process Clause itself or from statutory law. *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002).

It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution

and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v.*

*McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there

can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good

conduct time. *Id.* As Chu's sanctions did include the loss of good conduct time, he has

6

identified a liberty interest in this matter.

When a DHO hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive the following due process protections: (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; (3) aid in presenting a defense if the inmate is illiterate or the complexity of the case makes it unlikely that the inmate will be able to collect and present the necessary evidence for an adequate comprehension of the case; (4) an impartial tribunal; and (5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff*, 418 U.S. at 564-572. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled: *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme

7

Court. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to

these regulations, staff shall prepare an incident report when there is reasonable belief that

a violation of BOP regulations has been committed by an inmate and the staff considers

informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The

incident is then referred to the UDC for an initial hearing pursuant to § 541.7. The UDC "will

ordinarily review the incident report within five work days after it is issued, not counting the

day it was issued, weekends, and holidays." 28 C.F.R. § 541.7(c). This period may be

extended if the incident is being investigated for possible criminal prosecution. 28 C.F.R. §

541.4(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose

minor sanctions. 28 C.F.R. § 541.7(f). If the alleged violation is serious and warrants

consideration for more than minor sanctions, or involves a prohibited act listed in the

greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for

a hearing. 28 C.F.R. §§ 541.7(a), (g). The inmate will receive written notice of the

charge(s) against him at least twenty-four hours before the DHO's hearing, however the

inmate may waive this requirement. 28 C.F.R. § 541.8(c). The inmate is entitled to have a

staff representative, appear at the hearing, make a statement, present documentary

evidence, and present witnesses. 28 C.F.R. §§ 541.8(d), (e), (f). Following the hearing, the

inmate will receive a written copy of the DHO's decision. 28 C.F.R. § 541.8(h).

     In the instant case, it is clear that Chu was afforded all of the required procedural

rights set forth in *Wolff*. He received timely notice of the incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. Chu also received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Chu was then notified of his right to appeal.

Since Chu was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. The record clearly reveals the existence of specific documentary evidence submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. The DHO considered Chu's admission that he had marijuana on his person, though he claimed the marijuana did not belong to him and he was transporting for another inmate. He further considered the incident report wherein Officer Pappas stated that he found marijuana on Chu's person during a random pat search, a photograph taken by Officer Grego clearly depicting marijuana as described in the report, a memorandum from Officer Feger reporting that Chu stated that marijuana was found on his person but it did not belong to him, and a memorandum from Officer Pappas wherein he stated that he found eight packets of a green substance on Chu's person. Based on the foregoing, the Court concludes that the evidence before the DHO was sufficient to support the outcome of the

hearing and meets the requirements imposed by the Due Process Clause.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits

of 28 C.F.R. § 541, *et seq.* Chu was found guilty of a 100-level, high category prohibited

act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 100-level

offenses:

A.     Recommend parole date rescission or retardation.
B.     Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1.   Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C.     Disciplinary segregation (up to 12 months).
D.     Make monetary restitution.
E.     Monetary fine.
F.     Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
G.     Change housing (quarters).
H.     Remove from program and/or group activity.
I.     Loss of job.
J.     Impound inmate's personal property.
K.     Confiscate contraband.
L.     Restrict to quarters.
M.     Extra duty.

28 C.F.R. § 541.3 (Table 1). Thus, the sanctions imposed by the DHO were consistent with

the severity level of the prohibited act and within the maximum available to the DHO.

Accordingly, the petition will be denied as to incident report number 2394280.

## III.   Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be denied.  An

10

appropriate Order shall issue.

Date:  November ___14___, 2016

Robert D. Mariani
United States District Judge